IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER WILLIAMS,

       Petitioner,

Case No. 2:13-cv-02283-JE

   v.

MARK NOOTH,

FINDINGS AND RECOMMENDATION

       Respondent.

   Erick W. Ward
   Ward Grover, LLP
   516 W. 13th Avenue, Suite 201
   Bend, Oregon 97702

       Attorney for Petitioner

   Ellen F. Rosenblum, Attorney General
   Kristen E. Boyd, Assistant Attorney General
   Department of Justice
   1162 Court Street NE
   Salem, Oregon 97310

       Attorneys for Respondent

  1 - FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court robbery convictions and resulting sentence. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) should be denied.

## BACKGROUND

On May 30, 2006, the Multnomah County Grand Jury indicted petitioner on five counts of Robbery in the Second Degree. Dr. Frank Colistro conducted a psychological evaluation of petitioner and determined that while his "behavior might be indicative of malingering," his history supported the presence of chronic mental illness. Respondent's Exhibit 122, p. 2. Dr. Colistro concluded that petitioner suffered from a psychotic disorder and was not capable of assisting and cooperating with his attorney. *Id* at 2-3.

Over the course of two years, it appears petitioner had a total of five psychological evaluations when he was housed in both the Multnomah County Jail and the Oregon State Hospital. Respondent's Exhibit 121, p. 1. At his final evaluation conducted by Dr. Keith Linn on July 3, 2008, petitioner ended the evaluation too early for Linn to reach any conclusion regarding the issue of malingering, something Dr. Linn noted had been a prior clinical hypothesis along with Antisocial Personality Disorder. Respondent's Exhibit 122. As a result, Dr. Linn concluded that

petitioner was either "unable or unwilling to participate in his legal defense. . . ." *Id* at pp. 3-4.

In the months leading up to his trial, four different judges determined that petitioner was capable of aiding and assisting in his own defense, the final judge reaching that conclusion only one week before the trial. Trial Transcript, p. 15-16. As a result, his trial commenced on October 27, 2008. On the morning of trial, petitioner made a variety of *pro se* motions which the trial court denied, and petitioner informed the court he was hearing voices and complained of a headache. *Id* at 23, 25, 27. The trial judge advised petitioner not to be disruptive during the trial. *Id* at 27.

A jury ultimately convicted petitioner of two counts of Robbery in the Second Degree and acquitted him as to the remaining count.[1] The State sought upward departure sentences based on petitioner's persistent involvement in the criminal justice system and his supervision status at the time he committed the robberies at issue in this case. *Id* at 368-69. However, prior to sentencing petitioner re-entered settlement negotiations with the prosecutor and ultimately agreed to a sentence of 140 months in prison. His attorney stated on the record that he could not advise his client to enter into such an agreement, informed the court that petitioner

---

[1] The State dismissed two of the Robbery charges prior to trial.

3 - FINDINGS AND RECOMMENDATION

wished to discharge him, and asked the court to allow him to withdraw as counsel. *Id* at 371. In what appears to be a carefully worded statement to the court, counsel also stated that petitioner "has told me that he wants me to inform the Court that he's [been] hearing voices all day." *Id* at 372.

Petitioner made a number of odd statements and inquiries during the course of the sentencing proceeding. He twice asked if he would be receiving the death penalty, asked if he was going to federal prison as well as state prison, indicated he thought the judge had been representing him, and did not appear to realize when he had been sentenced. *Id* at 373-409. The prosecutor believed petitioner was just "trying to muddy up the record" with his bizarre statements and expressed her "concern [about] what kind of record we're going to have at this point." *Id* at 377, 380. Shortly thereafter, petitioner attempted to declare himself as "co-counsel" insisting he had enjoyed that role for the entirety of the trial, and the trial judge responded, "Mr. Williams, I'm not going to play any more games with you." *Id* at 381. The court ultimately allowed petitioner to proceed *pro se*. *Id* at 384.

The court then allowed petitioner to enter into a plea agreement wherein he pleaded guilty to the charges of which the jury had already convicted him, and stipulated to a sentence of 140 months in prison. *Id* at 371, 401. The trial court accepted the plea and sentenced petitioner accordingly. *Id* at 403.

4 - FINDINGS AND RECOMMENDATION

Petitioner took a direct appeal, but his attorney filed a *Balfour* brief when he was unable to find any non-frivolous issues to present.[2] Respondent's Exhibit 105. Petitioner filed a *Pro Se* Supplemental Brief containing a variety of due process claims. Respondent's Exhibit 106. The Oregon Court of Appeals rejected petitioner's claims on procedural grounds. Specifically, it determined that because he had entered into a guilty plea and stipulated to the sentence he received, his appeal was unreviewable. Respondent's Exhibit 107. Petitioner sought review in the Oregon Supreme Court, which was denied. Respondent's Exhibits 109 & 110.

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where he raised claims of trial court error and ineffective assistance of counsel. As his principal bases for the PCR challenge, petitioner asserted that consecutive sentences were not possible where his two Robbery II convictions should have merged for sentencing purposes, and his auditory hallucinations and the drugs he had ingested prevented him from making a knowing, voluntary, and intelligent decision to enter his plea. Respondent

---

[2] The *Balfour* procedure provides that counsel need not ethically withdraw when faced with only frivolous issues. Rather, the attorney may file Section A of an appellant's brief containing a statement of the case sufficient to "apprise the appellate court of the jurisdictional basis for the appeal." *State v. Balfour*, 311 Or. 434, 451, 814 P.2d 1069 (1991). The defendant may then file the Section B segment of the brief containing any assignments of error he wishes. *Id* at 452.

5 - FINDINGS AND RECOMMENDATION

filed for summary judgment, arguing that because petitioner's convictions did not merge under Oregon law, all of his claims must necessarily fail. Respondent's Exhibit 127, p. 3.

Petitioner responded that his "plea was not knowing, voluntary, or intelligently made because he should have and could have only been convicted of one count of Robbery" under Oregon law. Respondent's Exhibit 131.   The PCR trial court disagreed and granted the State's summary judgment motion on the basis that Oregon state law specifically allowed for consecutive sentences under the circumstances of petitioner's case.   Respondent's Exhibit 132 (citing *State v. Williams*, 229 Or. App. 79, 85 (2008)). Importantly, the PCR trial court also refused to entertain the merits of petitioner's claims pertaining to his competency and sentencing.   It did so under the belief that he could have raised them on direct appeal even though the Oregon Court of Appeals had already informed him he could not raise those issues.  Respondent's Exhibit 132, p. 2; Respondent's Exhibit 107.

Petitioner filed a PCR appeal wherein he raised a single assignment of error: whether he knowingly and voluntarily entered his plea agreement.   In his Appellant's Brief, he advised the Oregon Court of Appeals that "[t]he post-conviction trial court failed to address this issue and allowed defendant's motion for summary judgment focusing instead on petitioner's arguments that he could only receive concurrent sentences on his two convictions of

6 - FINDINGS AND RECOMMENDATION

robbery in the second degree." Respondent's Exhibit 133, p. 9.  He
concentrated his argument on whether his plea was permissible given
all of the surrounding circumstances, most notably his complaints
of auditory hallucinations.  The Oregon Court of Appeals affirmed
the PCR trial court's decision without opinion, and the Oregon
Supreme Court denied review. *Williams v. Nooth*, 257 Or. App. 420,
304 P.3d 468, *rev. denied*, 354 Or. 342, 313 P.3d 1126 (2013).

Petitioner filed this federal habeas corpus case on December
23, 2013 raising ten grounds for relief.  Respondent asks the
court to deny relief on the Petition because: (1) petitioner failed
to fairly present Grounds One, Two, Four, Five, Seven, Eight, Nine,
and Ten to Oregon's state courts, and they are now procedurally
defaulted; (2) insofar as Ground Three (unknowing plea) was a
federal claim petitioner presented to the Oregon state courts, it
was properly denied by the state courts; (3) petitioner's Ground
Six claim (actual innocence) fails to establish that he is actually
innocent; and (4) all of petitioner's claims lack merit.

## DISCUSSION

### I.  Unargued Claims

Without referencing the corresponding Grounds for Relief in
his Petition, petitioner chooses to brief three claims in his
supporting memorandum: (1) whether the trial court violated his
right to due process by accepting a plea that was unknowing,
unintelligent, and involuntary; (2) whether the trial court

violated his right to due process in accepting an unknowing and involuntary waiver of trial counsel; and (3) whether trial counsel was ineffective in withdrawing during a critical stage of the proceedings while his client was suffering from acute mental disease.

Petitioner does not argue the merits of his remaining claims, nor does he address respondent's specific arguments as to why petitioner is not entitled to relief on these claims. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

## II.   Exhaustion and Procedural Default

### A.   Standards

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v.*

8 - FINDINGS AND RECOMMENDATION

*Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

B.   **Analysis**

1.   **Direct Review Claims**

As recounted in the Background of this Findings and Recommendation, the Oregon Court of Appeals declined to address any of petitioner's direct review due process claims on their merits because they were not eligible for consideration under state law.

A federal court is precluded from reviewing the merits of a claim when the state court has denied relief on the basis of an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir.), *cert. denied*, 528 U.S. 965 (1999). A state procedural rule constitutes an "independent" bar only if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001). A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time it was applied by the state court. *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

When a petitioner believes a state procedural rule is not firmly established or regularly followed, he bears the initial burden of making "specific factual allegations that demonstrate the inadequacy of the state procedural rule, including citations to authorities demonstrating inconsistent application of the rule." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). If petitioner makes such a showing, then the ultimate burden shifts to the State to show that the procedural rule invoked by the state court is sufficiently independent and adequate to support a procedural default. *Id.*

The Oregon Court of Appeals dismissed petitioner's direct appeal for lack of jurisdiction because, pursuant to ORS 138.050 and ORS 138.222(2)(d), a defendant such as petitioner who pleads guilty in Oregon and is sentenced in accordance with a stipulated sentencing agreement may not proceed with a direct appeal. These statutory provisions proscribing review in this situation constitute independent and adequate state procedural rules, and petitioner does not argue otherwise. Accordingly, none of the claims petitioner raised on direct appeal are eligible for merits review in this federal habeas case.

### 2.   PCR Claims

With respect to petitioner's PCR proceedings, he raised several claims, three of which are most relevant to this case. Specifically, he alleged that his convictions and sentence were illegal because: (1) the auditory hallucinations affected his ability to make decisions and rendered him incapable of understanding that he could not be convicted of two counts of Robbery II under the facts of his case; (2) petitioner's plea was not knowing or intelligent because he was hearing voices that affected his ability to make sound decisions; and (3) petitioner's plea was not knowing, voluntary, or intelligent because he was under the influence of Oxycontin, Wellbutrin, and Tramadol when he agreed to the plea and stipulated to his sentence. Respondent's Exhibit 116, pp. 3-5. The PCR trial court determined that merger

was not appropriate under Oregon law, and that petitioner "is not allowed to raise issues in Post Conviction that were or could have been raised on appeal, as the sentencing issue and the issues regarding his competence to enter into the agreement obviously were." Respondent's Exhibit 132, p. 2.

In his PCR appeal, petitioner faulted the PCR trial court for entering summary judgment in the State's favor not because it erred on the merger issue, but because it never addressed whether he was competent to knowingly and voluntarily enter his plea. Respondent's Exhibit 133. Petitioner focused on the fact that he was experiencing auditory hallucinations and making bizarre statements at the time he entered his plea, thereby showing that he could not knowingly, intelligently, and voluntarily enter his plea. He also faulted the PCR trial court for not addressing the claim: "The post-conviction trial court failed to address this issue and allowed defendant's motion for summary judgment focusing instead on petitioner's arguments that he could only receive concurrent sentences on his two convictions of robbery in the second degree." *Id* at 9. He incorporated the same arguments in his Petition for Review to the Oregon Supreme Court. Respondent's Exhibit 135, p. 2.

It is clear from the foregoing that petitioner pursued a single claim to the Oregon Supreme Court: whether, given his auditory hallucinations and mental state, he was capable of

12 - FINDINGS AND RECOMMENDATION

entering a guilty plea that was knowing, voluntary, and intelligent. Although respondent believes this claim was not sufficiently preserved based on the contents of petitioner's response to the summary judgment motion, the record reveals petitioner placed the issue of his competence before the PCR trial court in a manner which allowed the court to address it.[3] Where he raised this same claim throughout his PCR proceedings, it is preserved for habeas corpus review.

Petitioner did, however, fail to fairly present his argued claims regarding his waiver of counsel and his allegation that he was the victim of ineffective assistance of counsel. As he can no longer present these claims to Oregon's state courts, they are procedurally defaulted and petitioner has not excused the default.

## III. **The Merits**

### A.   **Standard of Review**

An application for a writ of habeas corpus will not generally be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2)

---

[3] Where the state courts precluded petitioner from raising any claims on direct appeal, they cannot also refuse to entertain his claims on PCR under the theory that he should have raised them on direct appeal. *See* 28 U.S.C. § 2254(b)(1)(B)(i) (addressing situations involving the "absence of available State corrective process").

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In this case, however, there is no indication that any PCR court resolved petitioner's preserved due process claim on its merits. To the contrary, the PCR trial court faulted petitioner for not raising the claim during direct review even after the Oregon Court of Appeals had dismissed the direct review action as improper under state law. Respondent's Exhibit 132, p. 2. Where it is clear that the PCR trial court never considered the issue, and where the Oregon Court of Appeals affirmed that decision without issuing a written opinion, the standard of review is *de novo*. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**B.    Analysis**

In his sole preserved claim, petitioner asked the Oregon state courts to invalidate his convictions and sentence because he was not sufficiently competent to enter his guilty plea in a knowing, voluntary, and intelligent manner. "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v.*

*Stumpf*, 545 U.S. 175, 183 (2005) (citation omitted).  A defendant is competent to engage in his legal proceedings if he possesses "the mental acuity to see, hear and digest the evidence, and the ability to communicate in helping prepare an effective defense." *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001).

I have independently reviewed the record in this case and while petitioner made troubling statements during the course of his trial and sentencing, I am more persuaded by the fact that four different state-court judges found petitioner competent prior to his trial, with one such determination occurring only one week prior to trial.  In addition, the judge who presided over petitioner's trial and sentencing (thus observing petitioner first-hand over the course of four days) not only seemed satisfied with petitioner's competence, but also appeared to agree with the prosecutor's assessment that petitioner was intentionally attempting to "muddy up the waters" as evidenced by the judge's admonition to petitioner that he was "through playing games with [him]."  Trial Transcript, pp. 377, 381.

Moreover, it is worth noting that even when Dr. Colistro found petitioner not competent to aid and assist counsel, he noted that petitioner's behavior "might be indicative of malingering[.]"  Respondent's Exhibit 122, p. 2.  Dr. Linn attempted to make a determination on the malingering issue (among others), but

petitioner ended the evaluation shortly after it commenced thus preventing Dr. Linn from reaching a determination. *Id* at 3-4.

Had petitioner been correct on the merger issue under Oregon law, or if he had entered into a plea agreement that was clearly unfavorable, he would have a stronger claim. However, where Oregon law allowed for consecutive sentencing under the facts of this case, and where petitioner's possible sentencing exposure was 288 months had he proceeded with the sentencing hearing,[4] the totality of the record is sufficient to establish that he was competent to enter his plea. Accordingly, upon a *de novo* review, the court finds petitioner's due process claim to be without merit.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) should be denied and a judgment should be entered dismissing this case with prejudice. The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2),

---

[4] Given the nature of his crimes and his criminal history, the trial court found petitioner's gridblock to be "9A" for sentencing purposes. Trial Transcript, p. 407. Under Oregon's Sentencing Guidelines, that would result in a sentencing range of 66-72 months on each of the two counts that were ultimately imposed consecutively to each other. However, where an upward departure is warranted (which the State was prepared to seek and was likely to establish), the sentencing range for each count doubles to 132-144.

16 - FINDINGS AND RECOMMENDATION

particularly where the record clearly establishes that the plea agreement did not prejudice him.

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 17 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 31st day of August, 2015.

John Jelderks
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION